## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| SUEROS & BEBIDAS REHIDRATANTES, S.A. de C.V. and CAB ENTERPRISES, INC., | Civ. Action No.: _____ |
| Plaintiffs, | |
| vs. | |
| EL BOQUERON IMPORTS LLC, ACV DISTRIBUTORS LLC, ALEX ARRUE and DOES 1-10 | **(JURY DEMAND)** |
| Defendants. | |

## COMPLAINT

Plaintiffs Sueros & Bebidas Rehidratantes, S.A. de C.V. ("Sueros") and CAB Enterprises, Inc. ("CAB") (collectively "Plaintiffs"), by their attorneys and for their Complaint against El Boqueron Imports LLC ("EBI"), ACV Distributors LLC ("ACV"), Alex Arrue and DOES 1-10 (together with EBI, ACV, and Alex Arrue, "Defendants"), allege and state as follows:

## NATURE OF THE ACTION

1.      This is an anti-confusion and brand protection action to stop the unlawful importation, distribution, and sale by Defendants of unauthorized and materially different versions of Plaintiffs' Electrolit® premium hydration beverage.

2.      Electrolit® is wildly popular in the U.S., where it is consumed by

1

millions of U.S. consumers annually.

3.     Unwitting U.S. consumers are being exposed to counterfeit, unlawful, mislabeled and/or unauthorized product being imported, distributed, advertised, offered for sale and sold by infringers that is materially different from the genuine product that is authorized for sale by Plaintiffs.

4.     Defendants do not distribute and sell genuine U.S. Electrolit®. Instead, Defendants offer to sell, sell and/or distribute to U.S. retailers as well as U.S. end consumers unauthorized Electrolit-branded products that are materially different from genuine U.S. Electrolit®. ("Unauthorized Electrolit")

5.     The Unauthorized Electrolit that Defendants are selling and/or distributing is not sourced through an authorized chain of distribution for the United States and Defendants are aware that Unauthorized Electrolit is not genuine product, that it is materially different from genuine U.S. Electrolit®, and that these differences are likely to cause confusion amongst the retailers and end consumers to whom they sell the product.

6.     In addition, the Unauthorized Electrolit products that were sold, being offered for sale and/or distributed by Defendants are not compliant with United States Food and Drug Agency (FDA) requirements and also contain ingredients that are not present in genuine U.S. Electrolit® and that are not identified on the labels.

7.     Defendants have and continue to use Plaintiffs' Marks and Trade Dress

2

(defined below) for Electrolit® in such a fashion to intentionally create a false impression among the consuming public that Defendants' goods originate with Plaintiffs or are sponsored, approved by, managed and/or affiliated with Plaintiffs, and are misrepresenting the origin and the quality of goods sold.

8.    Plaintiffs have suffered and continue to suffer irreparable harm from Defendants' actions.

9.    Defendants' activities are jeopardizing CAB's relations with its authorized sub-distributors. Defendants offer to sell and sell infringing Unauthorized Electrolit in the U.S. at prices that undercut genuine Electrolit®. As a result of unauthorized sales and distribution of Electrolit-branded products, CAB's authorized sub-distributors have threatened to stop selling genuine Electrolit®. As a result, CAB's relationships with its sub-distributors and potential new distributors are being irreparably harmed, and this unlawful conduct has prevented CAB from expanding its market.

10.    The low price at which Defendants sell Unauthorized Electrolit is also both tarnishing the reputation of Plaintiffs and Electrolit® as a high quality and premium rehydration product and is causing an unsustainable race to the bottom on pricing that impacts Plaintiffs' ability to price their product fairly. Worse, once price erosion caused by Defendants becomes prevalent, it will likely prove impossible as a practical matter for Plaintiffs to raise prices back to pre-erosion levels and re-

solidify Plaintiffs' brand as a high quality and premium rehydration product if Defendants' infringement is not stopped.

11.     To stop this unlawful conduct and to recover the damages caused by it, Plaintiffs bring this action for injunctive and monetary relief.

## **THE PARTIES, JURISDICTION AND VENUE**

12.     Plaintiff Sueros is a Mexican company with its principal place of business at Av. España No. 1840, Colonia Moderna, C.P. 44190, Guadalajara, Jalisco, Mexico. Sueros is the owner of the Electrolit trademarks (listed below) and trade dress associated with genuine U.S. Electrolit® described below.

13.     Plaintiff CAB is a Delaware corporation with its principal place of business at 3201 Allen Parkway, Suite 100, Houston, TX 77019. CAB is the exclusive licensee in the United States for the trademarks and trade dress associated with genuine U.S. Electrolit®.

14.     Defendant EBI's principal place of business is 6467 Warren Drive #B, Norcross, Georgia 30093.

15.     Defendant ACV's principal place of business is 4836 Steve Reynolds Blvd., Norcross, Georgia 30093.

16.     Defendant Alex Arrue is the owner, member and registered agent of EBI and ACV who is directing the sale and/or distribution of Unauthorized Electrolit from 6467 Warren Drive #B, Norcross, Georgia 30093 and lists his registered agent

address for EBI and ACV as 4836 Steve Reynolds Blvd, Norcross, Georgia 30093.

17.    On information and belief, Defendants used and use the Electrolit®
Marks (defined below) and Trade Dress (defined below) in commerce in connection
with the offer for sale, sale and advertising of Unauthorized Electrolit without
Plaintiffs' consent and knowingly induced and contributed to such use by others.

18.    Defendant Alex Arrue directed and participated in these acts for the
benefit of himself as well for the benefit of Defendants EBI and ACV.

19.    Defendants were put on notice of their infringing conduct and therefore
have committed and commit this infringement willfully and in bad faith, with actual
knowledge of the infringing activity or at least with objective recklessness or willful
blindness that its acts constituted, induced or contributed to infringement.

20.    This Court has jurisdiction because this is an action arising under the
Trademark Act of 1946, as amended, 15 U.S.C. §§ 1051, et seq. (the Lanham Act),
jurisdiction being conferred in accordance with 15 U.S.C. § 1121 and 28 U.S.C. §§
1331 and 1338. This Court also has subject matter jurisdiction over this dispute
under 28 U.S.C. § 1332(a)(1) because there is complete diversity of citizenship
among the parties and the amount in controversy, exclusive of interest and costs,
exceeds $75,000. This Court also has jurisdiction for the claims made under Georgia
statutory and common law in accordance with the principles of supplemental
jurisdiction pursuant to 28 U.S.C. § 1367.

21. This Court has personal jurisdiction of Defendants because, on information and belief, Defendants reside and/or have a principal place of business in the State of Georgia and within this judicial district. Furthermore, on information and belief, Defendants have deliberately engaged in significant and continuous business activities within Georgia. Accordingly, there are established minimum contacts with the Northern District of Georgia.

22. Venue is proper in this district under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims alleged herein occurred in this district, and under 28 U.S.C. § 1391(c), because Defendants are subject to this Court's personal jurisdiction for purposes of this case.

## FACTUAL BACKGROUND

### Genuine U.S. Electrolit

23. Electrolit® was originally developed as a solution for dehydration in children, a crucial need during a wave of cholera striking Mexico at the time. The photograph below shows early Electrolit® product.



24.    Over the years, Electrolit® has proven to be a wildly successful product among children and adults. In 2014, CAB was formed in the United States and became the exclusive, master authorized distributor in the United States for Electrolit® product. In connection therewith, CAB was granted a license to the trademarks, copyrights and trade dress associated with genuine U.S. Electrolit® described below and was tasked with translating the overwhelming success of Electrolit® in Mexico into a similar dominance in the U.S. market.

25.    CAB is responsible for the marketing, labelling, and distribution of Electrolit® products in the United States.

26.    CAB takes that responsibility seriously by ensuring that the contents, packaging, and labelling of Electrolit® in the United States comply with U.S. laws and regulations; by subjecting its products to rigorous quality control standards; and by providing high-quality post-sale services to its customers. Those practices correspond with the preference of U.S. customers, who consider products to be higher quality when they comply with U.S. laws and regulations, are formulated to match U.S. consumer tastes, and feature the post-sale services that CAB provides. CAB continues to monitor the market by receiving consumer inquiries, tracking and investigating complaints, addressing spoilage issues, and performing necessary actions in response to such issues, including by conducting recalls or initiating legal proceedings. These activities have ensured continued goodwill for the Electrolit®

trademark and the investment that CAB and its sub-distributors have made in creating consumer demand for Electrolit®.

27.     Today, CAB distributes genuine U.S. Electrolit® to consumers through several channels, including online through retailers such as Amazon as well as through supermarkets, convenience stores and all grocery store formats.

28.     Genuine U.S. Electrolit® is currently sold in several flavors, including Orange, Fruit Punch, Grape, Strawberry Kiwi, Berry Bliss, Strawberry, Lemon-Lime, Hibiscus/Jamaica, Guava, Coconut, and Apple.

29.     CAB sells Electrolit® directly to retailers and through a network of authorized sub-distributors that distribute Electrolit® through the United States, including in Georgia. By carefully evaluating its authorized sub-distributors, CAB ensures that its products are distributed by business partners that are similarly invested in developing and safeguarding the goodwill associated with genuine Electrolit®. If an authorized sub-distributor fails to provide the high-quality services that CAB expects, CAB takes corrective measures.

30.     Sueros is the owner of the following "Electrolit" trademarks (U.S. Reg. Nos. 4,222,726; 4,833,885; 4,717,350; 4,717,232) and CAB is the exclusive licensee in the United States of these registered trademarks (collectively, the "Marks"), one or more of which appear on packaging and advertisements for all genuine U.S. Electrolit® products:

| Mark | U.S. Reg. No. | Reg. Date | Relevant Goods |
|---|---|---|---|
|  | 4222726 | Oct. 9, 2012 | *Class 5:* Electrolyte replacement solution for oral rehydration.<br><br>*Class 32:* Oral rehydration beverages, namely, sports drinks. |
| "ELECTROLIT" | 4833885 | Oct. 13, 2015 | *Class 5:* Pharmaceutical products, namely, electrolyte replacement solutions; veterinary products, namely, dog, horse, pig, cat, bird, and ruminant food, bacterial and bacteriological preparations for veterinary use, chemical reagents for veterinary purposes, enzymes for veterinary purposes, diagnostic preparations for |

| Mark | U.S. Reg. No. | Reg. Date | Relevant Goods |
|------|---------------|-----------|----------------|
| | | | veterinary purposes, veterinary vaccines; hygienic products, namely, skin cleansing solutions for medical use; dietetic substances for medical use, namely, diet pills, diet capsules, and diet drinks; baby food; poultices; wound dressings; dental poultices; dental mold poultices; disinfectants for home use; products for the destruction of harmful animals, namely, insecticides and pesticides; fungicides; herbicides.<br><br>*Class 32:* Beers; mineral waters; carbonated beverages; |

| Mark | U.S. Reg. No. | Reg. Date | Relevant Goods |
|---|---|---|---|
| | | | non-alcoholic beverages, namely, water, flavored water; fruit beverages and juices; syrups for making beverages. |
|  | 4717350 | Apr. 7, 2015 | *Class 5:* Electrolyte replacement solutions for oral rehydration.<br><br>*Class 32:* Oral rehydration beverages, namely, sports drinks containing electrolytes. |
|  | 4717232 | Apr. 7, 2015 | *Class 5:* Electrolyte replacement solutions for oral rehydration.<br><br>*Class 32:* Oral rehydration beverages, namely, sports drinks containing electrolytes. |

31.     True and correct copies of the registrations for the Marks are attached hereto as **Exhibit 1**.

32.     Since long prior to Defendants' acts complained of herein and through the present, Plaintiffs have made continuous use of the Marks in connection with genuine U.S. Electrolit® products and plan to do so in the future.

33.     The registrations for the Marks are valid, subsisting and incontestable and constitute conclusive evidence of Plaintiffs' exclusive right to use the Marks for the goods specified in the registrations. 15 U.S.C. §§ 1065, 1115(b).

34.     Plaintiffs use distinctive packaging (the "Trade Dress") to distinguish its genuine U.S. Electrolit® products in the marketplace. Sueros owns, and CAB is the exclusive licensee in the United States with respect to, the Electrolit Trade Dress, which consists of, but is not limited to the packaging illustrated below:



35.     Plaintiffs have used the Trade Dress pictured above, or in a similar fashion, on genuine U.S. Electrolit® product since at least as early as 2014 and through the present date. Plaintiffs are currently using the Electrolit Trade Dress in commerce and in connection with their sale of genuine U.S. Electrolit® and plan to continue such use in the future.

36.     The Trade Dress is arbitrary, non-functional and distinctive.

37.     The Marks and Trade Dress have been extensively and continuously used by Plaintiffs and are inherently distinctive and/or have become distinctive through the acquisition of secondary meaning.

38.     Since the formation of CAB in 2014, tens of millions of dollars have been spent in the United States to advertise and promote genuine U.S. Electrolit®. The Marks and Trade Dress are prominently displayed in Plaintiffs' advertising and

promotional materials.

39.     Plaintiffs advertise and promote genuine U.S. Electrolit® through various means, including electronic media, print media, promotional and point-of-sale materials, presence at live events and through various social media channels, including Facebook and Instagram.

40.     CAB's sale of Electrolit® in the United States has been tremendously successful because of its efforts to ensure the high quality of Electrolit®, as well as its substantial investment in the marketing and promotion of Electrolit® to customers.

41.     The Marks and Trade Dress are inherently distinctive, and as a result of Plaintiffs' extensive sales, promotion and advertising of genuine U.S. Electrolit®, the Marks and Trade Dress have become famous among the consuming public of Georgia and the United States and represent valuable goodwill to Plaintiffs. The Marks and Trade Dress are also famous among the general consuming public in Georgia.

42.     The use of the Marks dates back to the 1950s and the Marks have been in continuous, exclusive use since that time. CAB began using the Marks and Trade Dress in the United States in 2014 and since then has spent tens of millions of dollars on advertising and promotion of the Marks and Trade Dress among the general consuming public in the United States.

43.    As a result of Plaintiffs' efforts, in addition to the popularity of the Electrolit product itself, the Marks and Trade Dress have become household names among the general consuming public in the Georgia and the United States as a whole. The exponential growth of sales of genuine U.S. Electrolit and total sales volume also evidence the fame of the Marks and Trade Dress.

44.    Common to every genuine Electrolit® product sold in the U.S. is the quality control standards established by its manufacturer, maintained by Sueros and contractually mandated by CAB and each of its sub-distributors that dictate the conditions for manufacture, distribution, storage and sale of genuine U.S. Electrolit® products throughout authorized supply chains.

45.    Sueros only authorizes genuine U.S. Electrolit® for sale in the United States, and only by CAB. The Unauthorized Electrolit being sold by Defendants is not authorized to be sold in the United States.

### Unauthorized Electrolit is Materially Different

46.    Genuine U.S. Electrolit® is different from Unauthorized Electrolit in many respects. These differences are material to consumers.

47.    Genuine U.S. Electrolit® is different from Unauthorized Electrolit at least in that the formula of ingredients in genuine U.S. Electrolit® is different. For example, Unauthorized Electrolit contains artificial flavors and additives not found in Genuine U.S. Electrolit®. This difference is material to consumers.

48.    Genuine U.S. Electrolit® and its label is registered as a beverage with the FDA, but Unauthorized Electrolit is not. This difference is material to consumers.

49.    Genuine U.S. Electrolit® is different from Unauthorized Electrolit at least in that the labelling of genuine U.S. Electrolit® is different. These differences are material to consumers. As one example, the plastic laminated label of Genuine U.S. Electrolit® contains "Nutrition Facts" in English in compliance with FDA requirements.

50.    As another example, the label of genuine U.S. Electrolit® is written in English, whereas the label of Unauthorized Electrolit is written in Spanish. One aspect of this difference is that the freshness date printed on genuine U.S. Electrolit® is identified with the English words "USE BY," whereas Unauthorized Electrolit contains no such "USE BY" identification. These differences are material to consumers.

51.    As another example, the units of measure used on the label of genuine U.S. Electrolit® are in the imperial system that U.S. consumers recognize and that is required by some U.S. state laws, whereas the Unauthorized Electrolit contains measurements in the metric system, which many U.S. consumers are unfamiliar with. This difference is material to consumers.

52.    As another example, the names of the flavors of genuine U.S.

16

Electrolit® that appear on the product labels are unique to genuine U.S. Electrolit® and do not appear on Unauthorized Electrolit. Relatedly, the flavors of Unauthorized Electrolit are not authorized for sale in the United States by Sueros, CAB, or the FDA and do not appear in the English language on the labels of Unauthorized Electrolit. This difference is material to consumers.

53. As another example, the label of genuine U.S. Electrolit® identifies a U.S. toll free telephone number for consumers to call in case of questions or concerns, whereas the Unauthorized Electrolit does not identify such a U.S. toll free number. This difference is material to consumers.

54. As another example, the label of genuine U.S. Electrolit® reports different caloric values than does the label on the Unauthorized Product. This difference is material to consumers.

55. As another example, the label of Genuine U.S. Electrolit® contains bottle deposit refund information relevant to and required by certain U.S. states. The Unauthorized Electrolit does not contain such bottle deposit refund information on its label. This difference is material to consumers.

56. As another example, the label of all Unauthorized Electrolit products contains a medical claim that the product prevents or treats dehydration. The label states: "Solución esterilizada de electrolitos orales indicada para prevenir o tratar la deshidratación." However, the label of genuine U.S. Electrolit® does not contain

such a claim, nor could it under FDA regulations. This difference is material to consumers.

57.    As another example, the label of all Unauthorized Electrolit products contains a medical indication for use of the product to prevent and treat certain medical conditions. The label states: "INDICACIONES: Electrolit® es una solución rehidrante para la prevención y el tratamiento del desequilibrio hidroelectrolítico ocasionado por el exceso de calor, desgaste físico intense, insolación, resaca, vómito y/o diarrea. Electrolit® además de proporcinar glucosa, previene o trata la deshidratación mediante la reposición de líquidos y electrólitos contenidos en su fórmula." However, the label of genuine U.S. Electrolit® does not contain such an indication, nor could it under FDA regulations. This difference is material to consumers.

58.    As another example, the label of genuine U.S. Electrolit® contains the statement "SWEETENED WITH Glucose," whereas the Unauthorized Electrolit does not contain such a statement. This difference is material to consumers.

59.    As another example, the label of genuine U.S. Electrolit® contains the statement "GLUTEN free," whereas the labels of the Unauthorized Electrolit do not contain such a statement. This difference is material to consumers.

60.    As another example, the label of genuine U.S. Electrolit® contains a listing of the ingredients in the product, whereas the labels of the Unauthorized

Electrolit do not contain such a listing. This difference is material to consumers.

61.    As another example, some of the Unauthorized Electrolit contains additional labels that are not found on genuine U.S. Electrolit®. This difference is material to consumers.

62.    In addition, the pricing of genuine U.S. Electrolit® is different from the Unauthorized Electrolit. This difference is material to consumers.

63.    Consumers consider each of these differences between genuine U.S. Electrolit® and Unauthorized Electrolit (collectively, the "Material Differences") to be important to a decision about whether to purchase the products yet are unaware that the Unauthorized Electrolit products lack the features only present in genuine U.S. Electrolit®.

64.    Based on "gold standard" expert survey data, one or more of these Material Differences have been found by a Federal court to be material to consumers' purchasing decisions. *Sueros y Bebidas Rehidratantes, S.A. de C.V. v. Indus. Enters., LLC*, No. H-22-1304, 2023 U.S. Dist. LEXIS 156155, at *2 (S.D. Tex. Sep. 5, 2023).

65.    The court found that U.S. Electrolit® is different from Unauthorized Electrolit in ways that are significant to customers' and consumers' purchasing decisions. It found that many of the Material Differences are relevant to consumers' purchasing decisions and are material such that the use of the Marks in connection

with the sale of Unauthorized Electrolit would likely cause confusion. Ultimately the court held that the sale, offering for sale, distribution or advertising of Unauthorized Electrolit in the United States constituted trademark infringement, false designation of origin, unfair competition and resulted in unjust enrichment. The court further held that as a result of the sale and marketing of Unauthorized Electrolit, Plaintiffs were harmed, including harm to their goodwill in the Marks, harm to their reputation, price erosion, and lost sales and profits and that Plaintiffs would be irreparably harmed by continued sale of Unauthorized Electrolit. The court granted permanent injunctive relief as well.

66.     Similarly, the United States District Court for the Central District of California issued a temporary restraining order, preliminary injunction, and permanent injunction that enjoined an entity from selling Unauthorized Electrolit in the United States and awarded over $3,000,000 in damages and awarded attorneys' fees. *Rehidratantes v. Candies*, 2023 U.S. Dist. LEXIS 205648 (C.D. Cal. Nov. 13, 2023); *Rehidratantes v. Candies,* 2024 U.S. Dist. LEXIS 33822 (C.D. Cal. Feb. 26, 2024). The defendant in that action was selling Unauthorized Electrolit in a similar manner to the Defendants in this action.

67.     The Unauthorized Electrolit imported, advertised, distributed, offered for sale and/or sold by Defendants lack one or more of these Material Differences.

68.     Plaintiffs do not sell, authorize for sale or cause to be sold any

nonconforming products that lack any of the Material Differences within the United States. In fact, as will be discussed below, Plaintiffs actively police the market to search for and remove nonconforming products that lack the Material Differences such as the Unauthorized Electrolit sold by unauthorized sellers including Defendants.

### *Defendants and Their Unlawful Conduct*

69.    Defendants operate a business selling Unauthorized Electrolit.

70.    Defendants offer to sell and sell Unauthorized Electrolit from a warehouse located at 6467 Warren Drive #B, Norcross, Georgia 30093.

71.    Defendants are not an authorized distributor of CAB.

72.    Defendants are aware that their sales of Unauthorized Electrolit infringe upon Plaintiffs' trademarks and are otherwise unlawful, yet have taken no action to stop their unlawful behavior.

73.    After learning of Defendants' unlawful actions and their harmful effects, Plaintiffs engaged in reasonable efforts to further investigate and curtail such conduct.

74.    Prior to this lawsuit, Defendants were provided a cease and desist letter informing Defendants that they were selling Unauthorized Electrolit. The letter informed Defendants that the Unauthorized Electrolit did not comply with FDA regulations and was materially different than genuine U.S. Electrolit. Defendants

21

were informed that the Unauthorized Electrolit that it is offering to sell and sell "is not authorized to be sold in the United States," "is not FDA compliant," and "violates a number of U.S. laws." The letter also informed Defendants that the sales of this Unauthorized Electrolit causes a likelihood of confusion, is unlawful, and requested that Defendants immediately cease selling Unauthorized Electrolit.

75.    Despite receiving this letter, Defendants, upon information and belief, continue to knowingly and willfully sell Unauthorized Electrolit in bad faith, resulting in a likelihood of confusion among retailers and end consumers and unfair competition.

76.    EBI and ACV is the alter ego of Alex Arrue, at least because there is such a unity between them that there is no separation and because holding only EBI and ACV liable for the tortious acts complained of herein would result in an injustice. For example, in addition to committing tortious acts themselves as described above, upon information and belief, as owner of EBI and ACV, Alex Arrue has diverted profits from EBI and ACV to himself for his personal use and has used EBI and ACV for his personal purposes.

77.    In addition to EBI, ACV, and Alex Arrue identified by name herein, on information and belief, additional persons and entities whose identities are presently unknown are involved in the distribution and sale of Unauthorized Electrolit. Plaintiffs intend to amend this pleading to identify these additional

persons and entities by name as their identities are revealed during the course of discovery.

### *Harms Caused by Defendants' Actions*

78.    Plaintiffs have suffered and continue to suffer irreparable harm from Defendants' actions.

79.    First, Defendants' activities jeopardize CAB's relations with its authorized sub-distributors. CAB has invested significant time and capital developing its relationships with its authorized sub-distributors. Those relationships are reciprocal—CAB asks a great deal from its authorized sub-distributors in terms of marketing, monitoring, sales reporting, quality control and more, and in exchange offers important benefits including, above all, the knowledge that its authorized distributor cannot be underbid on genuine Electrolit, which is only authorized for sale by CAB. CAB's authorized sub-distributors are less likely to accept this arrangement—or may be tempted to cut costs by skimping on quality-control procedures critical to the Electrolit® brand—if Defendants are repeatedly able to obtain lower-cost but confusingly similar Unauthorized Goods and underbid authorized sub-distributors on supply contracts. Put simply, on information and belief, Defendants sell Unauthorized Electrolit to U.S. retailers and end-consumers at prices below what CAB is able to sell genuine U.S. Electrolit at, and in other instances sells Unauthorized Electrolit to retailers at prices below what CAB's

authorized sub-distributors sell genuine U.S. Electrolit® for. As a result, several of CAB's authorized sub-distributors have stated that they may stop selling genuine U.S. Electrolit purchased from CAB because these sub-distributors cannot compete against the low prices offered by infringing gray market resellers of Unauthorized Electrolit such as Defendants. As a result, CAB's ability to expand its market will be severely impacted.

80.    Second, Defendants' activities jeopardize Plaintiffs' delicate pricing mechanisms. Electrolit is marketed and sold to an enormous variety of customers in markets all over the world. This heterogeneity requires non-uniform pricing in order to compete in particularly cost-sensitive markets. Defendants, by illicitly importing Unauthorized Electrolit into the United States. and marketing it against Plaintiff's genuine U.S. Electrolit product force Plaintiffs into an unsustainable race to the bottom and jeopardize their ability to price their products fairly. Worse, once such price erosion becomes prevalent, it will prove impossible as a practical matter to raise prices back to pre-erosion levels, leading to diminished profits for Plaintiffs even after Defendants' infringement stops.

81.    Defendants deliberately lead customers to believe that the Unauthorized Electrolit they sell is the same as the genuine U.S. Electrolit that is formulated for the United States market, even though Unauthorized Electrolit contains a different formulation that poses risks for unsuspecting U.S. consumers.

Additionally, Defendants' acquisition and sale of Unauthorized Electrolit hinders Plaintiffs' ability to track its products, thereby potentially endangering the public by preventing Plaintiffs from resolving quality problems and recalling defective products. As Defendants have deliberately marketed its Unauthorized Electrolit in a misleading fashion, customers would be led to believe that Plaintiffs actions—rather than Defendants' acquisition, storage, and shipping of materially different products—led to the defect. This would hugely jeopardize Plaintiffs' commercial goodwill and brand reputation, and causes irreparable harm for which there is no adequate remedy at law.

82.     CAB also loses direct revenue every time a bottle of Unauthorized Electrolit is sold by Defendants in the United States in lieu of a bottle of genuine U.S. Electrolit that CAB would have sold but for the Defendants' actions.

83.     CAB has faced pressure from its authorized sub-distributors to sell genuine U.S. Electrolit® at lower prices so that the authorized sub-distributors can compete with the lower prices offered by infringing unauthorized resellers such as Defendants' for Unauthorized Electrolit.

84.     Moreover, CAB has been forced to expend a significant amount of money to combat the flood of Unauthorized Electrolit that has appeared on U.S. store shelves. Plaintiffs have previously engaged in similar activities to police the use of the Marks and Trade Dress. For example, over the past several years CAB has monitored

complaints and tips regarding the sale of Unauthorized Electrolit by retailers and wholesalers and engaged counsel to send cease and desist letters to these infringers to stop the spread of these infringing—and in many cases counterfeit—products.

## COUNT I – FEDERAL TRADEMARK INFRINGEMENT
### (15 U.S.C. § 1114)
### (Against All Defendants)

85.     Plaintiffs hereby restate and re-allege the allegations set forth in the preceding paragraphs and incorporate them by reference as if fully set forth herein.

86.     As alleged more fully herein, the USPTO has granted federal trademark registrations for the trademarks consisting of or incorporating the Marks, which are owned by Sueros. CAB is the exclusive licensee of the Marks in the U.S.

87.     Defendants' unauthorized sales, offers for sale, distribution or advertising of Unauthorized Electrolit containing the Marks to unsuspecting consumers is a violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

88.     Defendants' sale, offer for sale, distribution or advertising of Unauthorized Electrolit has created a substantial likelihood of confusion or caused mistake or deception in consumers' minds because the Unauthorized Electrolit is materially different from genuine U.S. Electrolit®.

89.     Defendants' unauthorized use of the Marks constitutes use in commerce, without the consent of Plaintiffs, of a reproduction, copy, or colorable imitation of the Marks and Trade Dress in connection with the sale, offer for sale,

distribution or advertising of products and/or services. Such use is likely to cause confusion or mistake, or to deceive customers, and therefore infringes the Marks and Trade Dress, in violation of 15 U.S.C. § 1114(1).

90.    Defendants were informed that the Unauthorized Electrolit that it is selling "is not authorized for sale in the United States", "violates a number of U.S. laws",  is "not FDA compliant" and that its actions constitute deliberate, knowing and willful infringement of Plaintiffs' rights in the Marks and Trade Dress with bad faith intent to cause confusion and trade on Plaintiffs' goodwill.

91.    As a result of Defendants' continued sale or advertisement of Unauthorized Electrolit, Plaintiffs have suffered and will continue to suffer irreparable harm to their goodwill and reputation with their retail and end-consumer customers, at least as a result of the confusion about and dissatisfaction with the Unauthorized Electrolit.

92.    Plaintiffs have no adequate remedy at law for the above immediate and continuing harm. Plaintiffs have been, and absent injunctive relief will continue to be, irreparably harmed by Defendants' actions.

93.    As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered damages to the Marks and Trade Dress and other damages in an amount to be proved at trial.

94.    Plaintiffs are entitled to, among other things, an order enjoining and

restraining Defendants from selling any Electrolit branded products, for the Unauthorized Electrolit to be destroyed pursuant to 15 U.S.C. § 1118, as well as actual damages, Defendants' profits, the costs of the action, reasonable attorneys' fees and any other remedies provided by 15 U.S.C. § 1116 and 1117.

<u>**COUNT II – INDIRECT AND CONTRIBUTORY TRADEMARK INFRINGEMENT**</u>
**(Against All Defendants)**

95.    Plaintiffs hereby restate and re-allege the allegations set forth in the preceding paragraphs and incorporate them by reference as if fully set forth herein.

96.    Defendants intentionally induced other parties to infringe the Marks and Trade Dress.

97.    Defendants continued to supply their product to persons whom they knew or had reason to know were infringing the Marks and Trade Dress.

98.    Defendants failed to take reasonable precautions against the occurrence of third parties' infringement of the Marks and Trade Dress under circumstances in which the infringing conduct could reasonably be anticipated.

99.    Defendants' actions constitute indirect and contributory infringement of Plaintiffs' exclusive rights in the Marks and Trade Dress.

100.    In addition, Defendants are liable for indirect infringement because, upon information and belief, Defendants provide Unauthorized Electrolit that bear Plaintiffs' Marks to retailers who infringe the mark by reselling those products to

unsuspecting and confused customers and that otherwise are likely to cause confusion. At the time Defendants provided these tools of infringement to retailers, Defendants knew or could reasonably be expected to know of Plaintiffs' Marks and that such tools of infringement would be used by retailers to cause confusion, tread upon Plaintiffs' goodwill in the Marks and otherwise unfairly compete with Plaintiffs.

101.    Defendants continue to supply Unauthorized Electrolit to their customers even after it knew or had reason to know that those customers were engaging in trademark infringement.

102.   Upon information and belief, Defendants' conduct leads to post-sale confusion by causing consumers who purchased Unauthorized Electrolit from Defendants' customers to believe that they are purchasing genuine Electrolit.

103.   As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered irreparable harm to the valuable Marks and Trade Dress and their reputation in the industry. Unless Defendants are restrained from further indirect and contributory infringement of the Marks and Trade Dress, Plaintiffs will continue to be irreparably harmed.

104.   Plaintiffs have no adequate remedy at law that will compensate for the continued and irreparable harm they will suffer if Defendants' acts are allowed to continue.

105.   As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered damages to the valuable Marks and Trade Dress and other damages in an amount to be proved at trial.

106.   Plaintiffs are entitled to, among other things, an order enjoining and restraining Defendants from selling any Electrolit branded products, for the Unauthorized Electrolit to be destroyed pursuant to 15 U.S.C. § 1118, as well as actual damages, Defendants' profits, the costs of the action, reasonable attorneys' fees and any other remedies provided by 15 U.S.C. § 1116 and 1117.

## COUNT III – FALSE DESIGNATION OF ORIGIN
### (15 U.S.C. § 1125(a)(1)(A))
### (Against All Defendants)

107.   Plaintiffs hereby restate and re-allege the allegations set forth in the preceding paragraphs and incorporate them by reference as if fully set forth herein.

108.   In violation of Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A), Defendants, independently and in conspiracy with others, in connection with the Unauthorized Electrolit, used in commerce a word, term, name, symbol or device, or any combination thereof, or a false designation of origin, false or misleading description of fact or false or misleading representation of fact, which was or is likely to cause confusion or to cause mistake, or to deceive as to an affiliation, connection or association with Plaintiffs as to the origin, sponsorship, or approval of Defendants' Unauthorized Electrolit by Plaintiffs.

109.   The purchasing public is likely to attribute to Plaintiffs, Defendants' use of the Marks as a source of origin, sponsorship, approval and/or authorization for the products Defendants sell and, further, purchase products from Defendants in the erroneous belief that Defendants are authorized by, associated with, sponsored by, or affiliated with Plaintiffs, when Defendants are not.

110.   Defendants' actions have been conducted intentionally and willfully, with the express intent to cause confusion and mistake, to deceive and mislead the purchasing public, to trade upon the high-quality reputation of Plaintiffs, and/or to improperly appropriate to themselves the valuable Marks.

111.   Defendants' unlawful conduct has deceived, and is likely to continue to deceive, a material segment of the consumers to whom Defendants have directed their marketing activities. Defendants' false and/or misleading statements are material in that they are likely to influence consumers to purchase products from Defendants and cause competitive and other commercial injuries to Plaintiffs. Defendants have made, and continue to make, false and/or misleading statements with the intent to cause confusion and mistake, or to deceive the public into believing that Defendants are authorized by, associated with, sponsored by, or affiliated with Plaintiffs, when Defendants are not. Plaintiffs have been damaged as a result.

112.   As a result of Defendants' misconduct, Plaintiffs have suffered, and will continue to suffer, irreparable harm to its goodwill and reputation with both its

31

customers and its authorized distributors.

113.   Plaintiffs have no adequate remedy at law for the above immediate and continuing harm. Plaintiffs have been, and absent injunctive relief will continue to be, irreparably harmed by Defendants' actions.

114.   Plaintiffs are entitled to, among other things, an order enjoining and restraining Defendants from selling any Electrolit branded products, for the Unauthorized Electrolit to be destroyed pursuant to 15 U.S.C. § 1118, as well as actual damages, Defendants' profits, the costs of the action, reasonable attorneys' fees and any other remedies provided by 15 U.S.C. § 1116 and 1117.

## COUNT IV – TRADEMARK DILUTION
### (15 U.S.C. § 1125(c))
### (Against All Defendants)

115.   Plaintiffs hereby restate and re-allege the allegations set forth in the preceding paragraphs and incorporate them by reference as if fully set forth herein.

116.   The Marks are famous and distinctive, and are widely recognized by the general consuming public of the United States as a designation of source of genuine U.S. Electrolit®.

117.   The Marks became famous source indicators for Electrolit products long before Defendants commenced their infringing activities.

118.   Defendants' acts as described herein began after the Marks became famous and are likely to and have tarnished Plaintiffs' valuable business reputation

and goodwill and are likely to blur the distinctiveness of the famous Marks.

119.   Defendants' acts are likely to cause and have caused dilution by tarnishment and blurring of the famous Marks in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

120.   On information and belief, Defendants' sale, offering for sale, distribution, and/or advertising of Unauthorized Electrolit in the United States have been committed deliberately and willfully, with knowledge of Plaintiffs' exclusive rights and goodwill in the Marks and with a bad faith intent to cause dilution of the Marks.

121.   Defendants' acts greatly and irreparably damage Plaintiffs and will continue to so damage Plaintiffs unless restrained by this Court; wherefore, Plaintiffs are without an adequate remedy at law. If not restrained, Defendants will have unfairly derived and will continue to unfairly derive income, profits, and business opportunities as a result of their acts of dilution. Accordingly, Plaintiffs are entitled to, among other things, an order enjoining and restraining Defendants from selling any Electrolit branded products, for the Unauthorized Electrolit to be destroyed pursuant to 15 U.S.C. § 1118, as well as actual damages, Defendants' profits, the costs of the action, reasonable attorneys' fees and any other remedies provided by 15 U.S.C. § 1116 and 1117.

## COUNT V – TRADEMARK DILUTION
### (OCGA § 10-1-451(b))
### (Against All Defendants)

122.   Plaintiffs hereby restate and re-allege the allegations set forth in the preceding paragraphs and incorporate them by reference as if fully set forth herein.

123.   The acts complained of herein constitute trademark dilution in violation of OCGA 10-1-451(b).

124.   The Marks are famous and distinctive and are widely recognized by the public, including throughout Georgia or in a geographic area in this state as a designation of source of genuine U.S. Electrolit®.

125.   Defendants' acts as described herein began after the Marks became famous and are likely to and have tarnished Plaintiffs' valuable business reputation and goodwill and are likely to blur the distinctiveness of the famous Marks.

126.   On information and belief, Defendants' sale, offering for sale, distribution, and/or advertising of Unauthorized Electrolit have been committed deliberately and willfully, with knowledge of Plaintiffs' exclusive rights and goodwill in the Marks and with a bad faith willful intent to cause dilution of the Marks.

127.   Defendants' acts greatly and irreparably damage Plaintiffs and will continue to so damage Plaintiffs unless restrained by this Court; wherefore, Plaintiffs are without an adequate remedy at law. If not restrained, Defendants will have

unfairly derived and will continue to unfairly derive income, profits, and business opportunities as a result of their acts of dilution. Accordingly, Plaintiffs are entitled to, among other things, an order enjoining and restraining Defendant from selling any Electrolit branded products, for the Unauthorized Electrolit, an award of Defendants' profits, Plaintiffs' reasonable attorneys' fees and any other remedies provided under the law.

## COUNT VI – UNFAIR COMPETITION
### (O.C.G.A. § 23-2-55)
### (Against All Defendants)

128.  Plaintiffs hereby restate and re-allege the allegations set forth in the preceding paragraphs and incorporate them by reference as if fully set forth herein.

129.  Defendants have violated 15 U.S.C. § 1114 and O.C.G.A. § 23-2-55 by using the Marks in commerce in connection with the sale, offering for sale, distribution, and advertising of goods, in a manner likely to cause confusion, mistake, or deception, without consent of the owner with the intention of deceiving and misleading the public.

130.  Defendants have also violated 15 U.S.C. § 1125(a) and O.C.G.A. § 23-2-55 by using the Marks in commerce in a manner likely to cause confusion, mistake, and deception as to the connection between Defendants and Plaintiffs and as to the origin, sponsorship, or approval of Defendants' products for sale in the United States by Plaintiffs.

131.   Defendants have also violated 15 U.S.C. § 1125(c) and O.C.G.A. § 23-2-55 by using the Marks in commerce in a manner likely to cause dilution by blurring and by tarnishment of the Marks.

132.   This conduct, together with the Defendants' other acts alleged herein, constitute unfair, unlawful, and fraudulent business acts and practices under O.C.G.A. § 23-2-55, because such acts are forbidden by various state and federal laws and are unscrupulous, unfair, and injurious to Plaintiffs. Defendants' acts have irreparably damaged Plaintiffs and will continue to do so unless restrained by this Court, and Plaintiffs are without an adequate remedy at law.

133.   In further violation of O.C.G.A. § 23-2-55 Defendants engaged in unfair competition by engaging in false, misleading or deceptive acts or practices in connection with their sale, offer for sale, distribution or advertising of Unauthorized Electrolit.

134.   In further violation Defendants have engaged in a number of deceptive practices including misrepresenting the source of goods it sells, misrepresenting the approval, ingredients, uses or benefits of goods or services, and misrepresenting the affiliation of another.

135.   As a direct and proximate result of Defendants' unfair competition, Plaintiffs have suffered irreparable harm to the valuable Marks and Trade Dress and their reputation in the industry. Unless Defendants' conduct is restrained, Plaintiffs

will continue to be irreparably harmed.

136.   Plaintiffs have no adequate remedy at law that will compensate for the continued and irreparable harm they will suffer if Defendants' acts are allowed to continue.

137.   As a direct and proximate result of Defendants' unfair competition, Plaintiffs have suffered damages, including lost profits and damages to the valuable Marks and Trade Dress and other damages in an amount to be proved at trial.

138.   Plaintiffs should also be entitled to punitive damages and its attorneys' fees and costs.

## COUNT VII – COMMON LAW TRADEMARK INFRINGEMENT
### (Against All Defendants)

139.   Plaintiffs hereby restate and re-alleges the allegations set forth in the preceding paragraphs and incorporate them by reference as if fully set forth herein.

140.   The acts complained of herein constitute trademark infringement in violation of the common law of the State of Georgia and elsewhere.

141.   As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered damages to the Marks and Trade Dress and other damages in an amount to be proved at trial.

142.   Plaintiffs are entitled to, among other things, an order enjoining and restraining Defendants from selling any Electrolit branded products, for the Unauthorized Electrolit, an award of Defendants' profits, Plaintiff's reasonable

attorneys' fees and any other remedies provided for under the law.

## COUNT VIII – COMMON LAW UNFAIR COMPETITION
### (Against All Defendants)

143.   Plaintiffs hereby restate and re-allege the allegations set forth in the preceding paragraphs and incorporate them by reference as if fully set forth herein.

144.   The acts complained of herein constitute unfair competition in violation of the common law of the State of Georgia and elsewhere.

145.   As a direct and proximate result of Defendants' unfair competition, Plaintiffs have suffered irreparable harm to the valuable Marks and Trade Dress and their reputation in the industry. Unless Defendants' conduct is restrained, Plaintiffs will continue to be irreparably harmed.

146.   Plaintiffs have no adequate remedy at law that will compensate for the continued and irreparable harm they will suffer if Defendants' acts are allowed to continue.

147.   As a direct and proximate result of Defendants' unfair competition, Plaintiffs have suffered damages, including lost profits and damages to the valuable Marks and Trade Dress and other damages in an amount to be proved at trial.

## COUNT IX – UNJUST ENRICHMENT
### (Against All Defendants)

148.   Plaintiffs hereby restate and re-allege the allegations set forth in the preceding paragraphs and incorporate them by reference as if fully set forth herein.

149.   By selling the Unauthorized Electrolit bearing Plaintiffs' valuable trademarks, Defendants have been unjustly enriched to Plaintiffs' detriment in violation of the common law of Georgia and elsewhere.

150.   Under principles of equity, Plaintiffs are entitled to damages, restitution and/or disgorgement of Defendants' ill-gotten gains.

## COUNT X – CONTRIBUTORY UNFAIR COMPETITION
### (Against All Defendants)

151.   Plaintiffs hereby restate and re-allege the allegations set forth in the preceding paragraphs and incorporate them by reference as if fully set forth herein.

152.   The actions by Defendants and their customers constitute false and misleading descriptions of fact, misrepresentations of fact, or designation of origin concerning the products bearing the Marks and are likely to cause confusion or misstate as to Defendants' affiliation, connection, or association with Plaintiffs or likely to cause confusion as to Plaintiffs' approval for Defendants or their customers to all products bearing the Marks.

153.   The actions by Defendants and their customers in advertising and promoting the Unauthorized Electrolit products misrepresents the nature, characteristics, qualities, and geographic origin of the Unauthorized Electrolit sold by Defendants and their customers.

154.   Defendants and their customers are using the Marks with full knowledge that those Marks are associated exclusively with Plaintiffs.

155.   Defendants encouraged and facilitated the infringing conduct by their customers.

156.   After being on notice of their customers' infringing conduct, Defendants failed to take actions to halt the infringement.

157.   Defendants continue to supply Unauthorized Electrolit to infringing customers even after they knew or had reason to know that those customers were engaging in trademark infringement.

158.   Defendants' acts of unfair competition are willful and deliberate and with the intent to reap the benefit of Plaintiffs' goodwill and reputation.

159.   Defendants' conduct is causing immediate and irreparable injury to Plaintiffs and to their goodwill and reputation and will continue both to damage Plaintiffs and to deceive the public unless enjoined by this Court.

160.   Defendants' acts greatly and irreparably damage Plaintiffs and will continue to so damage Plaintiffs unless restrained by this Court; wherefore, Plaintiffs are without an adequate remedy at law. If not restrained, Defendants will have unfairly derived and will continue to unfairly derive income, profits, and business opportunities as a result of their acts of unfair competition. Accordingly, Plaintiffs are entitled to, among other things, an order enjoining and restraining Defendant from selling any Electrolit branded products, an award of Defendants' profits, Plaintiffs' reasonable attorneys' fees and any other remedies provided under the law.

## COUNT XI – CONTRIBUTORY TRADEMARK DILUTION
### (Against All Defendants)

161.   Plaintiffs hereby restate and re-allege the allegations set forth in the preceding paragraphs and incorporate them by reference as if fully set forth herein.

162.   Plaintiffs' Marks are famous and well known through the United States and Georgia.

163.   Defendants and their customers' commercial use of Plaintiffs' Marks as described above has diluted and continues to dilute the distinctive quality of Plaintiffs' famous Marks by lessening their capacity to identify and distinguish Plaintiffs exclusively as the source of goods bearing or provided under the mark.

164.   Defendants and their customers' conduct is in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125 (c).

165.   Defendants encouraged and facilitated the infringing conduct by their customers.

166.   After being notified of their customers' infringing activity, Defendants failed to take action to halt the unlawful conduct.

167.   Defendants have continued to supply Unauthorized Electrolit to customers even after they knew or had reason to know that those customers were committing unlawful acts.

168.   Defendants' conduct is causing immediate and irreparable injury to Plaintiffs and to their goodwill and reputation and will continue both to damage

Plaintiffs and to deceive the public unless enjoined by this Court.

169.   Defendants' acts greatly and irreparably damage Plaintiffs and will continue to so damage Plaintiffs unless restrained by this Court; wherefore, Plaintiffs are without an adequate remedy at law. If not restrained, Defendants will have unfairly derived and will continue to unfairly derive income, profits, and business opportunities as a result of their acts of dilution. Accordingly, Plaintiffs are entitled to, among other things, an order enjoining and restraining Defendant from selling any Electrolit branded products, an award of Defendants' profits, Plaintiffs' reasonable attorneys' fees and any other remedies provided under the law.

## COUNT XII – GEORGIA DECEPTIVE TRADE PRACTICES ACT (OCGA § 10-1-370 *et seq.*)
### (Against All Defendants)

170.   Plaintiffs hereby restate and re-allege the allegations set forth in the preceding paragraphs and incorporate them by reference as if fully set forth herein.

171.   Defendants have violated OCGA § 10-1-370 by using the Marks in commerce in connection with the sale, offering for sale, distribution, and advertising of goods, in a manner likely to cause confusion, mistake, or deception, without consent of the owner.

172.   Defendants have also violated OCGA § 10-1-370 by using the Marks in commerce in a manner likely to cause confusion, mistake, and deception as to the connection between Defendants and Plaintiffs and as to the origin, sponsorship, or

approval of Defendants' products for sale in the United States by Plaintiffs.

173.   Defendants have also violated OCGA § 10-1-370 by using the Marks in commerce in a manner likely to cause dilution by blurring and by tarnishment of the Marks.

174.   Defendants' acts constitute a violation of Georgia's Deceptive Trade Practices Act, OCGA § 10-1-370, as they:

(a) cause likelihood of confusion or of misunderstanding as to the source, sponsorship, or approval of services; (b) cause likelihood of confusion or of misunderstanding as to affiliation, connection, or association with another; (c) represent that services have sponsorship, approval, status, affiliation, or connection that they do not have; and (d) misrepresenting the source of goods it sells, misrepresenting the approval, ingredients, uses or benefits of goods or services, and misrepresenting the affiliation of another.

175.   This conduct, together with the Defendants' other acts alleged herein, constitute unfair, unlawful, and fraudulent business acts and practices under Georgia's Deceptive Trade Practices Act, OCGA § 10-1-370, because such acts are forbidden by various state and federal laws and are unscrupulous, unfair, and injurious to Plaintiffs. Defendants' acts have irreparably damaged Plaintiffs and will continue to do so unless restrained by this Court, and Plaintiffs are without an adequate remedy at law.

176.   In further violation of OCGA § 10-1-370 Defendants engaged in unfair competition by engaging in false, misleading or deceptive acts or practices in connection with their sale, offer for sale, distribution or advertising of Unauthorized Electrolit.

177.   In further violation Defendants have engaged in a number of deceptive practices including misrepresenting the source of goods it sells, misrepresenting the approval, ingredients, uses or benefits of goods or services, and misrepresenting the affiliation of another.

178.   As a direct and proximate result of Defendants' unfair competition, Plaintiffs have suffered irreparable harm to the valuable Marks and Trade Dress and their reputation in the industry. Unless Defendants' conduct is restrained, Plaintiffs will continue to be irreparably harmed.

179.   Defendant's actions demonstrate a willful and bad faith intent to harm Plaintiffs' business and the goodwill and reputation of Plaintiff.

180.   Plaintiffs have no adequate remedy at law that will compensate for the continued and irreparable harm they will suffer if Defendants' acts are allowed to continue.

181.   As a direct and proximate result of Defendants' unfair competition, Plaintiffs have suffered damages, including lost profits and damages to the valuable Marks and Trade Dress and other damages in an amount to be proved at trial.

182.   Defendants' have willfully engaged in the deceptive trade practices above.

183.   Plaintiffs should also be entitled to punitive damages and its attorneys' fees and costs.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs pray for judgment as follows:

A.     For judgment that:

1.     Defendants have engaged in Federal Trademark Infringement in violation of the Lanham Act (15 U.S.C. § 1114);

2.     Defendants have engaged in Indirect and Contributory Trademark Infringement;

3.     Defendants have engaged in False Designation of Origin in violation of 15 U.S.C. § 1125(a)(1)(A);

4.     Defendants have engaged in direct and contributory Trademark Dilution in violation of 15 U.S.C. § 1125(c);

5.     Defendants have engaged in direct and contributory Trademark Dilution in violation of Georgia law;

6.     Defendants have engaged in direct and contributory Unfair Competition in violation of Georgia law;

7.     Defendants have engaged in Trademark Infringement in

violation of the common law of the State of Georgia;

8.    Defendants have engaged in Unfair Competition in violation of the common law of the State of Georgia;

9.    Defendants have engaged in Unjust Enrichment in violation of the common law of the State of Georgia; and

10.    Defendants have engaged in Deceptive Trade Practices in violation of Georgia law.

B.    For preliminary and permanent injunctive relief restraining and enjoining Defendants and all of their agents, servants, employees, successors and assigns, and all persons in active concert or participation with Defendants (or their agents) from:

1.    Selling, offering to sell, transporting, distributing, marketing, advertising, importing, or purchasing Electrolit branded products that are not authorized by Plaintiffs for sale in the United States market, including but not limited to the Unauthorized Electrolit;

2.    Using any Electrolit Mark and/or any other confusingly similar designation, alone or in combination with other words, phrases, symbols or designs, in connection with its business, as trademarks, trade names, domain name components or otherwise, to market, advertise, or identify Defendants' goods;

3.    Otherwise infringing the Marks;

4.      Representing by any means whatsoever, directly or indirectly, that any products or services offered or provided by Defendants are offered or authorized by Plaintiffs, or from otherwise taking any action likely to cause confusion, mistake, or deception on the part of consumers as to the source or origin of such products or as to any authorization, sponsorship, approval, or affiliation relationship between Defendants and Plaintiffs;

5.      Affixing, applying, annexing, or using in connection with the manufacture, distribution, marketing, advertising, packaging, sale, and/or offering for sale or other use of any products, a false description or representation, including without limitation words, symbols, photographs, or product representations similar to those used by Plaintiffs, tending to falsely describe or represent such as being those of Plaintiffs;

6.      Unfairly competing with Plaintiffs in any manner whatsoever or otherwise injuring their business reputation in the manner complained of herein;

7.      From diluting any of the Marks;

8.      From assisting, aiding or abetting any other person or business entity in engaging in or performing any of the activities referred to in subparagraphs (B)(1) through (B)(7) above; and

9.      Engaging in assignments or transfers, formation of new entities or associations or utilization of any other device for the purpose of circumventing or

otherwise avoiding the prohibitions set forth in sub-paragraphs (B)(1) through (B)(8) above.

C.      An order, under 15 U.S.C. §§ 1116 and 1118, requiring Defendants (including its employees and agents) to deliver to Plaintiffs (or allow Plaintiffs to pick up), or requiring to be destroyed, all Unauthorized Electrolit that is in Defendants' possession, custody, or control.

D.      Directing that Defendants make available to Plaintiffs for review, inspection, and copying all books, records, electronic records (including but not limited to all hard drives on computers and phones used for business purposes and any back up media) and all other documents concerning all transactions relating to the purchase, sale or unauthorized use of products or packaging incorporating the Marks and provide Plaintiff the names, addresses, and all other contact information in its possession for the source(s) of such products and packaging.

E.      Directing that Defendants produce to Plaintiffs a summary document showing the dates, quantities, names and addresses of all suppliers and customers from whom they have purchased or to whom they have sold any products bearing the Electrolit Marks.

F.      An order, pursuant to 15 U.S.C. § 1116, requiring Defendants to file with this Court and serve upon Plaintiffs within 30 days after the entry of a preliminary or permanent injunction a report, in writing and under oath, setting forth

in detail the manner in which Defendants have complied with the injunction and this Prayer for Relief.

       G.     An order:

            1.     Awarding Plaintiffs three times the profits received by Defendants from the sales and revenues of any kind made as a result of Defendants' sales of Unauthorized Electrolit, and damages that Plaintiffs have suffered as a result of Defendant's sales and marketing of Unauthorized Electrolit (including, but not limited to, Plaintiffs' lost profits, price erosion, and damages awarded pursuant to 15 U.S.C. § 1117, trebled);

            2.     Awarding Plaintiffs' attorneys' fees and costs;

            3.     Awarding Plaintiffs damages, attorneys' fees, and costs to the fullest extent provided for by the United States statute and the common law of Georgia, including exemplary and punitive damages;

            4.     Awarding Plaintiffs pre-judgment and post-judgment interest;

            5.     Awarding Plaintiffs exemplary and punitive damages to deter any future willful infringement as the Court finds appropriate;

            6.     Imposing joint and several liability among all Defendants for all sums awarded; and

            7.     Awarding Plaintiffs such other and further relief as this Court deems just and equitable.

## DEMAND FOR A JURY TRIAL

Plaintiffs demand a trial by jury on all issues so triable.

Dated: August 29, 2024                    Respectfully Submitted,

*/s/ Joshua Weeks*

Joshua Weeks
joshua.weeks@alston.com
**ALSTON & BIRD LLP**
One Atlantic Center
1201 West Peachtree Street
Atlanta, GA 30309
Telephone: (404) 881-7000
Facsimile: (404) 881-7777

Paul J. Tanck *(PHV App. Forthcoming)*
paul.tanck@alston.com
Neal J. McLaughlin *(PHV App. Forthcoming)*
neal.mclaughlin@alston.com
**ALSTON & BIRD LLP**
90 Park Ave
New York, NY 10016
Telephone: (212) 210-9400
Facsimile: (212) 210-9444

***Attorneys for Plaintiffs Sueros & Bebidas Rehidratantes, S.A. de C.V. and CAB Enterprises, Inc.***

## <u>CERTIFICATION</u>

In accordance with L.R. 5.1C, I hereby certify that this document has been prepared in 14-point, Times New Roman font.

*/s/ Joshua Weeks*
Joshua Weeks
ALSTON & BIRD LLP
